U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:19-cv-00817-PGB-TBS

WYNDHAM VACATION OWNERSHIP, INC., et al.

Plaintiffs,

v.

HAROLD O. MILLER, ESQUIRE, et al.,

Defendants.
_________________________________/

**MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND MEMORANDUM IN SUPPORTTHEREOF OF DEFENDANTS HAROLD O. MILLER, ESQUIRE AND HAROLD O. MILLER ATTORNEY, LLC**

COME NOW, Defendants, HAROLD O. MILLER, ESQUIRE and HAROLD O. MILLER ATTORNEY, LLC (collectively "MILLER"), by and through their undersigned attorneys, and pursuant to Rule 12(b)6), Fed.R.Civ.P., move to dismiss Counts II, III, IV, and V of the First Amended Complaint for Damages and Injunctive Relief filed by Plaintiffs, WYNDHAM VACATION OWNERSHIP, INC., et al. (collectively "WYNDHAM"). In support thereof, MILLER alleges:

**I.INTRODUCTION**

1. WYNDHAM claims that it is a global leader in the development of timeshare properties and that it has valid and binding agreements with individuals who purchased timeshare

interests from WYNDHAM (the "Wyndham Owners"). It claims that Defendant, John Mortimer ("Mortimer"), MILLER and Solomon Cross violated the Lanham Act, tortiously interfered with WYNDHAM's timeshare contracts with Wyndham Owners, and engaged in deceptive trade practices.

2. WYNDHAM alleged that Mortimer is the beneficial owner and person in control of two domain names and operates his business advertising through the domain names. (Doc. 14, ¶3). Mortimer allegedly profits from improperly soliciting Wyndham Owners through false and misleading advertisements for "timeshare cancellation services" and then assisting them in the termination/cancellation of their timeshare contracts.

3. After engaging in the purported false and misleading advertising, Mortimer (called the "Marketing Arm Defendant" in the First Amended Complaint), allegedly enter into contracts with Wyndham Owners. Once a Wyndham Owner signs a contract with Mortimer, he allegedly notifies MILLER and MILLER represents the Wyndham Owners and assists them in attempting to terminate the timeshare contracts with WYNDHAM. After contracting with the Wyndham Owners, Mortimer purportedly instructs them to "do little or nothing on their behalf except directing them to stop making payments" on their timeshare contracts. WYNDHAM alleges that these

practices result in foreclosure and substantial harm to the Wyndham Owners and to WYNDHAM.

4. On April 30, 2019, WYNDHAM filed this suit seeking injunctive and monetary relief. In its First Amended Complaint, WYNDHAM asserts claims for: a) false advertising in violation of the Lanham Act against Mortimer only (Count I); b) contributory false advertising in violation of the Lanham Act against MILLER and Solomon Cross (Count II); c) tortious interference with contractual relations against all Defendants (Count III); d) civil conspiracy to commit tortious interference against all Defendants (Count IV); and e) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Defendants (Count V).

## II. ARGUMENT

### A. Legal Standards

5. The Federal Rules of Civil Procedure require pleaders to provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. See Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with the pleading requirements or fails to set forth a plausible claim, it may be dismissed under Rule 12(b)(6). See Ashcroft v. Iqbal, 556 U.S. 662, 672, 678-79 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

6. Claims must be founded on sufficient "factual content" to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. See Iqbal, 556 U.S. at 678; see also Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015). To assess the sufficiency of the factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. See Iqbal, 556 U.S. at 679; Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678, F.3d 1211, 1215–16 (11th Cir. 2012).

7. Courts do not consider other matters outside the four corners of the complaint, and must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. See Hayes v. U.S. Bank Nat'l Ass'n, 648 Fed. App'x. 883, 887 (11th Cir. 2016); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Where a complaint alleges false and fraudulent misrepresentations under FDUPTA, the plaintiff must plead the alleged fraud with particularity pursuant to Rule 9(b),

Federal Rules of Procedure. Koch v. Royal Wine Merchants, Ltd., 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012).

**B. Count I Of The First Amended Complaint Fails To State A Claim For False Advertising Under The Lanham Act Against Mortimer**

8. In Count I, WYNDHAM asserts a claim against Mortimer for false advertising under the Lanham Act. The Lanham Act is intended to "protect persons engaged in commerce within the control of Congress against unfair competition" -- that is, against "injuries to business reputation and present and future sales." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1389-90 (2014) (citation and internal alterations omitted). A plaintiff alleging a claim of false advertising under the Lanham Act must adequately plead, and ultimately prove, that: a) the advertisements of the opposing party were false or misleading; b) the advertisements deceived, or had the capacity to deceive, consumers; c) the deception had a material effect on purchasing decisions; d) the misrepresented product or service affects interstate commerce; and e) the plaintiff has been -- or is likely to be -- injured as a result of the false advertising. *Id.* (citations omitted); Global Tech LED, LLC v. Hilumz Int'l Corp., 2016 WL 3059390 (M.D. Fla. May 31, 2016). WYNDHAM's claim that Mortimer violated the Lanham Act is based upon the purported "false

and misleading" advertisements which "materially misrepresent" the "services offered by" Mortimer (and by implication MILLER and Solomon Cross)[1]:

a) Mortimer gives a 100% service guarantee, which is false and/or misleading because there is no "100% Service guarantee", unless "Defendants" consider a default and foreclosure or deed-in-lieu to satisfy their obligations to consumers, and "Defendants" do not "do exactly what we say we will do.";

b) "Defendants" cannot be "100% successful" and are not "100% successful" unless a foreclosure is considered a "success", which no reasonable person would do, and "Defendants" do not have a variety of "options" a consumer can chose that "Defendants" "know we can deliver";

c) "Defendants" do not "negotiate directly with [a] timeshare company", they generally send a single letter and do nothing further, which cannot be considered a "negotiation";

d) "Defendants" not offer a "100% guarantee", they cannot guarantee that "the resort will make you an offer to end your timeshare obligation" other than guaranteeing a default and

---

1 Although this Court must accept WYNDHAM's allegations as true in evaluating WYNDHAM's claims and ruling on this dismissal motion, MILLER strenuously denies that he obtained clients from Mortimer and Solomon Cross through the advertising alleged in paragraphs 5-9 and 60-61 of the First Amended Complaint.

foreclosure, which no reasonable consumer would consider to be the services being advertised by "Defendants"; and

e) "Defendants" do not pursue any result and cannot "mak[e]" a developer "take the timeshare back"; and because "Defendants" have no "legal process" to utilize other than default and foreclosure.

9. This alleged conduct by Mortimer (and by implication MILLER and Solomon Cross) is not actionable under the Lanham Act. Since WYNDHAM freely admits that it has an "Ovation Program" which is available to assist Wyndham Owners who want to terminate their timeshare contracts, any advertising which outlines the services rendered by Mortimer cannot reasonably cause injuries to WYNDHAM's business reputation and present and future sales, and does not come close to providing a legally-cognizable basis for a Lanham Act claim.

10. Under the Lanham Act, "literally false statements and statements that are literally true, but misleading," are actionable. See, e.g., Global Tech Led, LLC v. Himluz Int'l Corp., 2017 WL 588669, at *6 (M.D. Fla. 2017) (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); Advisors Excel, L.L.C. v. Scranton, 2014 WL 12543802, at * 4 (S.D. Fla. Sept. 15, 2014) (listing examples of non-

actionable statements of opinion, including predicted outcomes of future events). On the other hand, statements of puffery or opinion generally are not. Id. Like puffery, other non-actionable opinions involve predictions that do not lend themselves to "empirical verification." See Global Tech, supra, 2017 WL 588669, at *6. Non-actionable opinions include predictions about the future. *Id.* (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); Cavic v. Grand Bahama Dev. Co., 701 F.2d 879, 883 (11th Cir. 1983) (promise of future action or prediction of future events is not a representation, there is no right to rely on it, and it is not false when made); MDVIP, Inc., supra, at 561 (promise to deliver exceptional product or service is a matter of opinion rather than fact).

11. When evaluating the falsity of an advertisement, "a court must analyze the message conveyed in full context and must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 745 F.Supp.2d 1359, 1377 (S.D. Fla. 2010) (dismissing Lanham Act false advertising claim). Mortimer's alleged advertising includes non-actionable statements of opinion, puffery, or predictions. The statements regarding the anticipated

cancellation of the Wyndham Owners' timeshare contracts predict future events and are not actionable. See Global Tech, at *6. None of the statements attributed to Mortimer "guarantee" certain results, including the termination of the timeshare owners' contracts. Moreover, WYNDHAM does not allege that Mortimer's purported 100% guarantee or any of his other statements were literally false or that Wyndham Owners were actually deceived.

**The Alleged Statements Do Not Constitute "Commercial Advertising Or Promotion" Required Under The Lanham Act.**

12. To come within the scope of the Lanham Act, a plaintiff must show that the statements occurred within the context of "commercial advertising or promotion," which has been defined to include: a) commercial speech; b) by a defendant who is in ***commercial competition*** with plaintiff; c) for the purpose of influencing consumers to buy defendant's goods or services; and d) the representations … must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. See Tobinick v. Novella, 848 F.3d 935, 950-51 (11th Cir. 2017) (emphasis added); Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1349 (11th Cir. 2012).

13. WYNDHAM is engaged in the business of developing and selling timeshares. Mortimer (and the other Defendants) do none of these things. Rather, Mortimer allegedly operates a service that

assists owners in existing timeshares which have already been purchased. As stated by Judge Presnell in a related action, "[Plaintiff timeshare developers] do not compete with the exit company in the sale of goods or services. Rather, Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences overlap, Plaintiffs and [the timeshare exit companies] are engaged in entirely different markets. They are adversaries, not competitors." See Orange Lake Country Club, Inc. v. Reed Hein & Assocs., 2018 WL 5279135, at *8 (M.D. Fla. Oct. 24, 2018). MILLER is a practicing attorney and has not been accused of disseminating the purported false and misleading advertising. He is accused merely of "knowingly inducing or causing the conduct or by materially participating in it by providing a necessary element of the false and misleading advertising."

14. Mortimer (and by implication MILLER and Solomon Cross) are therefore in no way involved in competitive advertising under the meaning of subsection (2) of the Lanham Act. The facts of this case simply do not fall within the context of "commercial advertising or promotion," and therefore this case does not come within the reach of the Lanham Act.

**The Challenged Advertisements At Issue Do Not Fall Under The Zone Of Protected Interests**

15. As the United States Supreme Court explained in Lexmark, the Lanham Act should not be read expansively "to allow all factually injured plaintiffs to recover." Lexmark, at 1388. Rather, the statutory cause of action extends only to plaintiffs "whose interests fall within the zone of interests protected by the law invoked" and "whose injuries are proximately caused by violations of the statute." *Id.* at 1388-91. To satisfy this requirement, the plaintiff must allege: 1) "an injury to a commercial interest in reputation or sales" and 2) an "economic or reputational injury flowing ***directly*** from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1390-91 (emphasis added). In addition, the alleged harm must have a "sufficiently close connection to the conduct the statute prohibits." Glob. Tech LED, LLC v. Hilumz Int'l Corp., 2016 WL 3059390, at *3 (M.D. Fla. May 31, 2016) (holding that dismissal of complaint was proper where the plaintiff failed to "specifically allege … both that the false or misleading statement actually deceives or is likely to deceive a substantial segment of the intended audience and that the statement results in actual or

probable injury") citing Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1348 (Fed. Cir. 1999).

16. WYNDHAM has not satisfied the initial *Lexmark* requirement of proximate cause. Based on WYNDHAM's theory of wrongdoing, WYNDHAM has not shown and cannot show economic or reputational injury flowing directly from the purported "deception" in Mortimer's advertising. The "harm" WYNDHAM claims -- i.e., decisions made in connection with existing timeshare contracts, and the outcomes of same -- do not have a "sufficiently close connection" to the alleged advertising. Allowing a non-competitor to bring a claim against a party (or an attorney like MILLER) who attempts to assist consumers desiring to exit their timeshares under a theory that Mortimer's advertising is "false and misleading" would expand the Lanham Act well beyond its plain meaning and intent and would completely prohibit any timeshare exit companies from operating their businesses.

17. WYNDHAM clearly lacks standing to sue Mortimer (and by implication MILLER and Solomon Cross) under the Lanham Act. WYNDHAM alleges that it suffered injury to its commercial interests because Wyndham Owners stopped making payments on their timeshare contracts. But WYNDHAM fails to allege that the injury flows directly from the purported false advertising. None of the

advertisements include instructions to Wyndham Owners to stop making payments. Moreover, WYNDHAM alleges that Mortimer purportedly instructed the Wyndham Owners to stop making payments after he solicited them through advertising. WYNDHAM's injury is too remote from the advertising and not the type of interest the Lanham Act was intended to protect.

**C. The First Amended Complaint Fails To State A Claim For Contributory False Advertising (Count II)**

18. Count II asserts a claim for contributory false advertising against MILLER and Solomon Cross. To state a contributory false advertising claim, a plaintiff must adequately plead an underlying claim for false advertising. Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., No. 12-60741-CIV, 2014 WL 1329359, at *17 (S.D. Fla. Mar. 31, 2014), aff'd, 797 F.3d 1248 (11th Cir. 2015). Since WYNDHAM has utterly failed to state a Lanham Act claim for false advertising, the claim for contributory false advertising under the Lanham Act also fails.

**D. The First Amended Complaint Fails To State A Claim For Tortious Interference With Contract (Count IV)**

19. To survive a motion to dismiss on its tortious interference claim against MILLER, WYNDHAM must plead: a) the existence of a contract under which WYNDHAM has rights; b) MILLER's knowledge of that contract; c) MILLER's intentional procurement of

the contract's breach; d) the absence of any justification or privilege; and e) WYNDHAM suffered damages as a result of MILLER's interference. See Ace Pro Sound & Recording, LLC v. Albertson, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007); Hush Little Baby, LLC v. Chapman, 2015 WL 9165909, *8 (M.D. Fla. 2015); Pelc v. Nowak, 2012 U.S. Dist. LEXIS 87007, at *4-5 (M.D. Fla. 2012).

20. To be liable for tortious interference, a defendant must have both "an intent to damage the business relationship and a lack of justification" for doing so. See Smith v. Emery Air Freight Corp., 512 So.2d 229, 230 (Fla. 3d DCA 1987). As set forth below, WYNDHAM's allegations fall short of its burden of pleading the essential elements of a tortious interference claim.

**MILLER Cannot Have Interfered With The Contracts As A Matter Of Law Because They Were Agents And/Or Representatives Of Wyndham Owners**

21. A party cannot interfere with its own contract. See e.g., Cedar Hills Props. Corp. v. E. Fed. Corp., 575 So.2d 673, 676-77 (Fla. 1st DCA 1991); Ethyl Corp. v. Balter, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980). Agents or representatives acting for and on behalf of a principal cannot be held liable for tortious interference. See, e.g., Richard Bertram, Inc. v. Sterling Bank & Trust, 820 So.2d 963, 965 (Fla. 4th DCA 2002); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 386 (Fla.

4th DCA 1999); see also Abruzzo v. Haller, 603 So.2d 1338, 1339-41 (Fla. 1st DCA 1992). The interfering defendant must be a third party and "a stranger to the business relationship." Treco Int'l S.A. v. Kromka, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) (emphasis added). WYNDHAM's allegations, however, demonstrate that MILLER was necessarily hired by, and works for, the Wyndham Owners to assist them in exiting from their contracts with WYNDHAM. As an agent, representative, or attorney of the Wyndham Owners, MILLER cannot interfere with any contract to which their clients were a party as matter of law.

**The Timeshare Owners Were Predisposed To Terminate The Contract**

22. Under Florida law, a party's "predisposition to breach" precludes a finding that it was induced to breach by a third party. See Ingenuity, Inc. v. Linshell Innovations, Ltd., 644 Fed. Appx. 913, 916 (11th Cir. 2016); see also Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769, 772 (Fla. 4th DCA 1978). The "gravamen of an action for tortious interference with a contractual relationship" is the malicious involvement of a third party inducing its breach with resulting injury. See McKinney-Green, Inc. v. Davis, 606 So.2d 393, 397 (Fla. 1st DCA 1992); Cedar Hills Properties Corp. v. Eastern Federal Corp., 575 So.2d 673, 676 (Fla. 1st DCA 1991). As a predicate to any malicious

involvement, however, a contract party's "predisposition to breach … precludes any finding that [it] was induced to breach by [an outside party]." Ingenuity, Inc., 644 Fed. Appx. at 916 (quoting Farah v. Canada, 740 So. 2d 560, 562 (Fla. 5th DCA 1999)); see also Chi. Title Ins. Co. v. Alday–Donalson Title Co. of Fla., 832 So.2d 810, 814 (Fla. 2d DCA 2002).

23. An agent, representative, or advisor (especially an attorney) does not tortiously interfere with a contract if he/she merely assists someone who decides to breach the contract. See Winmark Corp. v. Hill, 2009 U.S. Dist. LEXIS 29687, at *4 (D. Minn. 2009). Wyndham Owners voluntarily contact Mortimer because they are already dissatisfied with WYNDHAM and seek to renegotiate or cancel their timeshare contracts. Mortimer does not actively seek out WYNDHAM owners as clients, but instead offers his services to the general public through advertising. After he is retained, MILLER simply engages in legal representation of the Wyndham Owners.

24. WYNDHAM's attempts to state a cause of action for tortious interference in Count III of the First Amended Complaint fail as a matter of law.

**E. The First Amended Complaint Fails To State A Claim For Civil Conspiracy (Count IV)**

25. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Craig v. Kropp, 2017 U.S. Dist. LEXIS 88871, at *8 (M.D. Fla. 2017). The allegations of the First Amended Complaint do not sufficiently plead these elements. As described above, there is no valid underlying claim for tortious interference in Count III; this is fatal to WYNDHAM's civil conspiracy claim. See EMI Sun Village, Inc. v. Catledge, 2013 U.S. Dist. LEXIS 140321 at *4 (S.D. Fla. 2013) ("[T]here is no actionable conspiracy claim absent an underlying wrong.").

26. An agent cannot conspire with his or her corporate principal or employer, or another such agent, because a conspiracy requires at least two actors, and a corporation is a single entity that can only act through its agents, officers, and employees. Cedar Hills Properties Corp. v. Eastern Federal Corp., 575 So. 2d 673, 676 (Fla. 1st DCA 2007). This principle is referred to as the "intracorporate conspiracy doctrine." Based on this doctrine, MILLER cannot conspire with Mortimer. See American Credit Card Telephone Co. v. Nat'l Pay Telephone Corp., 504 So. 2d 486, 488

(Fla. 1st DCA 1987) (holding that outside counsel fall within ambit of the intracorporate conspiracy doctrine, just as in-house counsel would). The only exception to this rule is where the agent "has an independent personal stake, apart from that of the corporation, in achieving the object of the conspiracy." Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc., 629 So. 2d 252, 256 (Fla. 3d DCA 1993). The exception to the rule is not applicable since MILLER has no such independent personal stake.

27. To the extent that WYNDHAM's claims for civil conspiracy are based on Miller's alleged conduct in sending letters of legal representation and demand letters to WYNDHAM on behalf of timeshare owners, such claims are barred as a matter of law by Florida's litigation immunity privilege. The privilege provides legal immunity "to statements or actions taken during a judicial proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, PA v. U.S. Fire Ins. Co., 639 So.2d 606, 607 (Fla. 1994); see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So.2d 380, 383 (Fla. 2007) (privilege applies in all causes of action, whether common-law torts or statutory violations).

28. Absolute immunity applies to the parties and their counsel. See Palaxar Grp., LLC v. Williams, 2014 WL 5059286, at *9 (M.D. Fla. 2014) (applying Florida law) (citation omitted). The

privilege extends to pre-suit demand letters. See Robb v. Rahi Real Estate Holdings LLC, 2011 WL 2149941, at * 3 (S.D. Fla. 2011). In *Robb*, the court dismissed a plaintiff's civil conspiracy claim because the act of sending demand letters failed to constitute the requisite "unlawful act or a lawful act by unlawful means." *Id.*, at *3. The court noted that even if the defendant's conduct in sending the demand letters was improper, Florida law recognizes a privilege to engage in reckless or outrageous behavior if the defendant "did no more than assert legal rights in a legally permissible way." *Id.*, at *3, n.3.

29. The privilege to send demand letters is supported by public policy. "[T]he policy reasons for adopting a rule of immunity for actions taken in judicial proceedings" are based on "the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications…." The presumption is that the consequences of a party's actions will be addressed and remedied in the particular case. *See Robb, supra,* 2011 WL 2149941, at *3. As a matter of public policy, to allow anything more could lead to the disastrous re-litigation of issues into perpetuity. Count IV for civil conspiracy is barred as a matter of law and must be dismissed for all of the above reasons.

### F. The Complaint Fails To State A Claim For Violation Of FDUTPA (Count V)

30. FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." §501.204(1), Fla. Stat. To state a FDUPTA claim, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc., 169 So. 3d 164, 167 (Fla. 4th DCA 2015). The success of WYNDHAM's FDUTPA claim is directly tied to the success of their Lanham Act claim for false advertising. Therefore, having failed to adequately state a claim under the Lanham Act, they also cannot state an FDUTPA claim. See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta, 702 F.3d at 1296; see also Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008) (a plaintiff's "claim for a violation of [FDUTPA] rises or falls on the success of" their Lanham Act false advertising claim).

31. Because WYNDHAM's claims of false and misleading advertising are grounded in fraud, WYNDHAM must plead the alleged fraud with particularity pursuant to Rule 9(b). See, e.g., Koch v. Royal Wine Merchants, Ltd., 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012); Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283,

1294 (S.D. Fla. 2007) (same); Stires v. Carnival Corp., Stires v. Carnival Corp., 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) (directing plaintiff to replead FDUTPA damages with particularity); see also North Brevard Hospital District v. McKesson Technologies, Inc., 2017 WL 951672, at *5 (M.D. Fla. 2017) (violations of FDUTPA must be pled with particularity); USA Nutraceuticals Group, Inc. v. BPI Sports, LLC, 2016 WL 4254257, at *3 (S.D. Fla. 2016); Librizzi v. Ocwen Loan Servicing, LLC, 2015 WL 4761647, at *9 (S.D. Fla. 2015) (Rule 9 applies where defendant alleged to have violated FDUTPA "through deception"); Blair v. Wachovia Mortg. Corp., 2012 WL 868878, at *3 (M.D. Fla. 2011); DHG Properties, LLC v. Ginn Companies, LLC, 2010 WL 5584464, at *5 (M.D. Fla. 2010) (FDUTPA claim sounded in fraud and was subject to Rule 9(b)); Siever v. BW Gaskets, Inc., 2009 U.S. Dist. LEXIS 20691, at * 3 (M.D. Fla. 2009) (FDUTPA must be pled with particularity); Wrestle Reunion, LLC v. Live Nation Television Holdings, Inc., 2008 U.S. Dist. LEXIS 61428, at *3 (M.D. Fla. 2008) (same).

32. WYNDHAM has failed to allege any misrepresentations or any false and misleading advertising engaged in by MILLER. In conclusory fashion, WYNDHAM alleges that MILLER has "participated in the deceptive and unfair trade practices by enabling and

participating in the activities of other defendants." This vague allegation does not satisfy the pleading standard of Rule 9(b), Fed.R.Civ.P.

## III. CONCLUSION

33. As demonstrated above, WYNDHAM has failed to state a cause of action against MILLER in Counts II, III, IV, and V of the First Amended Complaint. This Court should therefore dismiss these counts.

WHEREFORE, Defendants, HAROLD O. MILLER, ESQUIRE and HAROLD O. MILLER ATTORNEY, LLC, respectfully request that this Court enter an order dismissing Counts II, III, IV, and V of the First Amended Complaint for Damages and Injunctive Relief, awarding attorney's fees and costs, and awarding such other and further relief as is just and proper.

DATED this 5th day of July, 2019.

Respectfully submitted,

TODD M. HOEPKER, P.A.
Post Office Box 3311
Orlando, Florida 32802-3311
Telephone: (407) 426-2060
Facsimile: (407) 426-2066
toddhoepker@hoepkerlaw.com
ATTORNEY FOR DEFENDANTS

By: /s/ Todd M. Hoepker
TODD M. HOEPKER, ESQUIRE
Florida Bar No: 507611

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been sent via the ECF System to: ALFRED J. BENNINGTON, JR., ESQUIRE and GLENNYS E. ORTEGA-RUBIN, ESQUIRE, 300 S. Orange Ave., Suite 1600, Orlando, FL 32801 on this 5th day of July, 2019.

/s/ Todd M. Hoepker
TODD M. HOEPKER, ESQUIRE

S:\MyFiles\26573\19001\MOT TO DISMISS.docx